DAN • M. LEE, Justice,
for the Court:
This is an appeal from a declaratory judgment rendered in the Chancery Court of Jefferson Davis County on July 18,1983. The appellees had filed a complaint requesting a declaratory judgment to determine the rights of all of the parties to this suit with respect to an oil, gas and mineral lease executed on January 7, 1972, and covering 2505.22 acres in Jefferson Davis County. After several additional parties intervened, a motion for summary judgment was filed by the defendants. The parties stipulated that the bona fide contention between them involved the rights and legal relations of the parties to the lease, which depended upon the resolution of the issue of whether two parcels of the land in dispute were contiguous or non-contiguous to the remainder. The issue of contiguity relied upon the admission by all of the defendants, with the exception of Placid Oil Company, that two of the parcels of land in question touched only at the corners.
The motion for judgment on the pleadings and the motion for summary judgment were denied. After trial, the court ruled that the two parcels of land in question were non-contiguous, and that the lease had expired, thus terminating any rights of appellants under the lease. The defendants have appealed that ruling.
STATEMENT OF FACTS
Sometime prior to 1972, Robert M. Moon, who represented United States Lumber Company, and Clyde Love, who represented Shubuta Oil Company, began negotiations for various oil, gas and mineral leases. U.S. Lumber wished to lease approximately 54,000 acres of land. However, since the terms of the leases would allow production on any part of a tract to “hold” *1024 the entire tract, U.S. Lumber wished to limit each lease to approximately 2,560 acres of land. Accordingly, the company entered into several leases, each representing a different configuration of land within the 54,000 gross acres. It was apparently the intention of both U.S. Lumber and Shu-buta to negotiate each lease so that the land in question would consist of adjoining tracts. As was conceded by both sides during oral argument, that intent was realized in all of the leases except for one which is not the subject of this dispute.
The lease which is the basis for this lawsuit covers the land described as follows:
Township 6 North, Range 18 West: Section 17: N ⅛ NE ¼; E ½ SE ¼ NE ¼; N ⅛ NW ¼; NE Vi SW ¼; SW ⅛ SW ¼; Section 18: Entire Section except NE ⅛ SE ¼ and SE ⅛ SW ¼; SE ¼ SW ¼; Section 19: Entire Section except E ½ SE ¼; Section 20: NW ¼ NE ¼; SW ⅝ NE ¼; E ½ NW ¼; NE ¼ SW ¼; N ⅛ SE ¼; SE ¼ SW ¼; S ½ SE ⅛; Section 21: NW ¼ SW ¼; Section 30: N ⅛ NW ⅝; SE ⅛ NW ¼; SW ¼ NE ¼; SW ¼; SW Vi NW ¼; and Section 31: SW ¼; S ⅛ NW ¼; W ⅛ NE ⅛⅛ W ½ SE Ví; W ⅛ NE Vt SE Vi.
A diagram of the area in dispute follows (land covered by the lease is shaded):
[[Image here]]
*1025 Because of the problems anticipated in attempting not to hold all of the leases involving other non-adjacent properties, the parties drafted and inserted paragraph two into all of the leases, when, in fact, this particular 2505.22 acre lease did not contain any widely separated tracts. This lawsuit is based on conflicting interpretations of paragraph two of the subject lease. Paragraph two reads as follows:
2. Subject to the other provisions herein contained, this lease shall be for a term of five years from this date (called “primary term”) and as long thereafter as oil, gas or other mineral is produced from said land or lands with which said land or any part thereof is pooled hereunder, provided, that if this lease covers any one or more areas of land which do not have any boundary line in common with any part of any other areas of land covered by this lease, each such area being referred to herein as a “non-contiguous area,” and if this lease is maintained in force pursuant to any of its provisions for at least two years after termination of the primary term, then as to each noncontiguous area, after the seventh anniversary date of this lease, this lease shall be for a term as long thereafter as oil, gas or other mineral is produced from such noncon-tiguous area or from lands from which any part of such noncontiguous area is pooled hereunder, provided, further, if upon the seventh anniversary date of this lease oil, gas or other mineral is not being produced on any such noncontiguous area or on acreage pooled therewith, but lessee is then engaged in drilling or reworking operations thereon or shall have completed a dry hole thereon within sixty (60) days prior to the seventh anniversary date, this lease as to such non-contiguous area shall remain in force so long as operations are prosecuted with no cessation of more than sixty (60) consecutive days, and if they result in the production of oil, gas or other mineral, so long thereafter as oil, gas or other mineral is produced from such noncontiguous area or from lands pooled therewith.
By the terms of paragraph 2, the lease may run indefinitely as long as there is production on the land, or production on land contiguous thereto.
The parties to this lawsuit are assignees of U.S. Lumber and Shubuta. At the time this suit was brought, the entire lease was sought to be held by production on a tract in Section 30 and a tract in Section 31 of the lease. (At the time this case was argued, there was also production in the NE lk of the SW ¼ of Section 17.) Clearly, by the terms of the lease, production in Sections 30 and 31 would also hold Sections 19, 18, and the greater part of Section 17. However, Amoco, the successor in interest to U.S. Lumber, wished to terminate the lease as to the NE xk of the SW ¼ of Section 17, and all of the land held by the lease in Sections 20 and 21. As can be seen by the diagram above, the only relationship of these parcels of land to the rest of the lease is the fact that they touch the corner of the SW ¼ of the SW ¼ of Section 17. The threshold issue, then, as stipulated by the parties, is whether those tracts are “non-contiguous areas,” as described in paragraph two of the lease.
The trial court, in finding for the plaintiffs, noted the case of Wilkerson v. Harrington, 115 Miss. 637, 76 So. 563 (1917), in which this Court accepted the definition of “contiguous” found in Webster’s Unabridged Dictionary: “in actual or close contact to; touching; adjacent; near; lying and adjoining.” 115 Miss. at 647, 76 So. at 564, and cited with approval Clements v. Crawford County Bank, 64 Ark. 7, 40 S.W. 132 (1897), which held that, “Where two parcels of land comer with each other, they are contiguous_ 64 Ark. at 10, 40 S.W. at 133. However, the trial court went further to hold that the lease in this case required more than mere touching to satisfy the definition of contiguous; that a common boundary line is required. We hold that this ruling of the learned chancellor was in error.
THE ISSUE OF CONTIGUITY
In defining what shall be considered as a non-contiguous area, the lease provides *1026 “that if this lease covers any one or more areas of land which do not have any boundary line in common with any part of any other areas of land covered by this lease, each such area being referred to herein as a ‘non-contiguous area’_” By this language, the parties did not set out an explicit standard for determining contiguity, but merely sought to provide for the unusual situation where non-adjacent tracts of land were included in the same lease.
In Mississippi, the definition of contiguous parcels of land was articulated in Wilkerson to include parcels which merely touched at a corner, relying upon Clements v. Crawford County Bank, 64 Ark. 7, 40 S.W. 132 (1897). We reiterate that, “Where two parcels of land corner with each other, they are contiguous, they touch_” 64 Ark. at 10, 40 S.W. at 133.
Black’s Law Dictionary 391 (rev. 4th ed.1968) defines contiguous as “in close proximity ... neighboring ... adjoining ... touching _” The American Heritage Dictionary (1976) defines it as “touching; next or adjacent to.” Webster’s New International Dictionary (3d ed. 1976) includes “nearby, close....” We do not find that our acceptance of cornering parcels of land as contiguous does violence to any of these definitions.
Wilkerson recognized that “What constitutes one tract depends largely upon the particular statute or context in which the phrase is employed.” 115 Miss, at 646, 76 So. at 564. In Railroad Commission v. American Trading and Production Corp., 323 S.W.2d 474 (Tex.1959), the Texas court dealt with the issue of whether a tract was subdivided pursuant to a density rule promulgated by the Oil and Gas Commission. The court there found that the uniform practice of the Commission was to consider cornering tracts as contiguous. “It would not be difficult to imagine the confusion which would result in the industry if we were to adopt American’s theory [that cornering tracts were not contiguous].” Id. at 483. We agree, and hold that Wilkerson applies in the context of oil and gas leases.
CONCLUSION
Because the language of the lease at issue requires a holding that the parties have defined contiguity so that tracts of land which touch at corners are contiguous, and because the tracts of land in question under this lease clearly touch at the corners, we reverse the decision of the chancellor below and render judgment in favor of the appellants. In so doing, we find it unnecessary to rule on the issues presented by the denial of summary judgment.
REVERSED AND RENDERED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.